# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **RICHARD LEON MOORE,** | ) | |
|     **Petitioner,** | ) | |
| | ) | **CIVIL ACTION NO. 13-00047-KD-B** |
| **v.** | ) | |
| | ) | **CRIMINAL ACTION NO. 11-00229-KD-B** |
| **UNITED STATES OF AMERICA,** | ) | |
|     **Respondent.** | ) | |

## ORDER

This action is before the Court on the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("the Petition") (Doc. 66[1]) and supporting affidavit (Doc. 67-1) filed by Petitioner Richard Leon Moore ("Moore"), a federal prisoner proceeding *pro se*;[2] the Government's Response in opposition (Doc. 74); and Moore's Reply (Doc. 75) and Supplemental Reply (Doc. 79) to the Response. Upon consideration, the Court finds that Moore's claim regarding counsel's alleged failure to file an appeal is due to be set for an evidentiary hearing pursuant to § 2255(b) and Rule 8 of the Federal Rules Governing Section 2255 Cases in the United States District Courts. The Court further finds that all other claims in the Petition are due to be **DENIED** without an evidentiary hearing, as "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief " on these claims. § 2255(b).

---

[1] All docket citations refer to the docket of the criminal action.

[2] The Court abides by the Eleventh Circuit's directive that "courts should construe a habeas petition filed pro se more liberally than one drawn up by an attorney." E.g., Gunn v. Newsome, 881 F.2d 949, 961 (11th Cir. 1989).

# I.     **Procedural History**

On August 25, 2011, a Grand Jury of this district returned an indictment against Moore and a co-defendant.  (Doc. 1).  The indictment alleged eight counts against Moore.  Count One alleged a violation of 21 U.S.C. § 846 – specifically, conspiracy to violate 21 U.S.C. § 841(a)(1) by possessing with intent to distribute a mixture and substance containing a detectable amount of cocaine ("crack cocaine"), "[b]eginning on or about November 1, 2010, and continuing until on or about the date of the return of th[e] indictment."  Count One also charged that "[t]he quantity of crack cocaine involved in the conspiracy exceeded 28 grams[,]" thus making Moore "subject to the penalty provisions of Title 21, United States Code, Section 841(b)(1)(B)."  (Doc. 1 at 1-2).  The remaining seven counts alleged various violations of § 841(a)(1) involving crack cocaine occurring at various times during the period of the alleged conspiracy.

At Moore's initial appearance and arraignment on September 14, 2011, Moore entered a plea of not guilty, and attorney W. Gregory Hughes ("Hughes"), a member of this district's CJA panel, was appointed to represent him.  (Docs. 17-19).  On October 7, 2011, Moore filed his notice of intent to plead guilty to Count One (Doc. 28), along with a Plea Agreement and Factual Resume  (Docs. 29-30[3]).  On October 11, 2011, the Government filed an Enhancement Information pursuant to 21 U.S.C. § 851(a).  (Doc. 34 [duplicate at Doc. 35]).  On October 18, 2011, Moore, accompanied by counsel, pled guilty to Count One of the indictment.  (Doc. 37).

On February 7, 2012, prior to sentencing, attorney Bruce Maddox ("Maddox") entered a notice of appearance on behalf of Moore.  (Doc. 41).  Hughes accordingly moved for leave to withdraw from further representation of Moore (Doc. 42), which was granted on February 10, 2012 (Doc. 43).  The Probation Office entered a Presentence Investigation Report for Moore on

---

[3] The Court notes that Hughes signed the factual resume (Doc. 30) but not the Plea Agreement (Doc. 29).  Moore and counsel for the Government signed both documents.

April 11, 2012. (Docs. 55-58). On June 13, 2012, Moore entered his position regarding sentencing factors enumerated in the Presentence Investigation Report, stating: "[A]lthough he has objections to certain factual matters in the presentence report, none of those objections, if sustained, would alter either the Offense Level calculation or the Criminal History Category. He therefore does not object to the ultimate calculations of the Presentence Investigation Report." (Doc. 62).

On June 15, 2012, the Court sentenced Moore to 188 months imprisonment, followed by 6 years of supervised release. (Doc. 64). On June 19, 2012, Moore filed a Notice of Non-Appeal with the Court. (Doc. 63). No direct appeal was taken. On January 23, 2013, Moore filed the present Petition (Doc. 66).[4]

## II. Analysis

### a. Applicable Legal Principles

#### 1. Habeas Generally

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is

---

[4] Section 2255 contains a 1–year statute of limitations:

> (f) A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final . . .

In this case, where no direct appeal was filed, the judgment of conviction became final when the time for filing a direct appeal expired. Atkins v. United States, 204 F.3d 1086, 1089, n.1 (11th Cir.2000); see also Ramirez v. United States, 146 F. App'x 325 (11th Cir. 2005). Since the judgment was entered on June 22, 2012 (Doc. 64), the time for filing a notice of an appeal expired on July 6, 2012, and the one-year period for filing a § 2255 motion began running from that date. Thus, the Petition is timely under § 2255(f).

otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence . . . If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(a)-(b).

Habeas relief is an extraordinary remedy which "may not do service for a[] [direct] appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).  A petitioner who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. "[U]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited . . . [A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice."  United States v. Addonizio, 442 U.S. 178, 185 (1979) (citation and quotation omitted).  See also Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998) ("Nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.") (citations and internal quotations omitted).  "A habeas petitioner must present a claim in clear and simple language such that the district court may not misunderstand it."  Dupree v. Warden, 715 F.3d 1295, 1299 (11th Cir. 2013).  However, the Court "liberally construe[s] petitions filed pro se."  Id.

Moore took no direct appeal of the conviction and sentence in his underlying criminal case.  In general, claims not raised on direct appeal may not be considered on collateral attack.

E.g., Massaro v. United States, 538 U.S. 500, 504 (2003). A petitioner can, nevertheless, overcome his procedural default of claims not raised on direct appeal:

> To obtain collateral relief on errors that were not raised on direct appeal, [a petitioner] "must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 167–68, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). This standard is "a significantly higher hurdle than would exist on direct appeal." Id. at 166, 102 S. Ct. 1584 . . .
>
> . . . "Constitutionally ineffective assistance of counsel can constitute cause" under Frady. Holladay v. Haley, 209 F.3d 1243, 1254 (11th Cir. 2000). "In order to do so, however, the claim of ineffective assistance must have merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir.2000).

Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013). See also Cross v. United States, 893 F.2d 1287, 1289 (11th Cir. 1990).[5]

However, "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." Massaro, 538 U.S. at 509. Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." Id. at 504.

## 2. Ineffective Assistance of Counsel

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; Strickland v. Washington, 466 U.S. 668, 684-86 (1984). To prevail on a claim of ineffective assistance of counsel, the petitioner must demonstrate: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice as a result of that deficient performance. Strickland, 466 U.S. at 687-88. Thus, a petitioner must establish both prongs of the Strickland test. Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001). With respect to the deficient performance prong, the petitioner

---

[5] A defendant may also obtain collateral relief on errors not raised on direct appeal if he demonstrates actual innocence. E.g., Bousley v. United States, 523 U.S. 614, 622 (1998). However, Moore does not assert actual innocence in his petition.

must show that his counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. Of course, there is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Id. at 689. Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. Id.

In addition to deficient performance, a petitioner asserting an ineffective assistance of counsel claim is also required to demonstrate prejudice. Purvis v. Crosby, 451 F.3d 734, 743 (11th Cir. 2006). Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. It is not enough for the petitioner to show that the error had some conceivable effect on the outcome of the proceeding. Rather, the petitioner must show that the result would have been different. Id. at 693.

"In Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), the Supreme Court held that 'the two part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel,' and that 'to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " United States v. Pease, 240 F.3d 938, 941 (11th Cir. 2001) (quoting Hill, 474 U.S. at 58-59).

**b.    Petition Claims**

Moore's Petition asserts four grounds for relief:

- Ground 1 – His counsel failed to file a notice of appeal, despite Moore's express request that an appeal be taken. (Doc. 66 at 4; Doc. 66-1 at 2-7).

- Ground 2 – The Court "lacked jurisdiction" to enhance Moore's sentence pursuant to 21 U.S.C. § 841(b)(1)(C) because the proper procedural requirements were not followed, and pursuant to the Career Offender sentencing guidelines "because the prior convictions used to form the bases for Career Offender treatment are constitutionally invalid . . ." (Doc. 66 at 5. See also Doc. 66-1 at 7-13).

- Ground 3 – His guilty plea was entered "unknowing, involuntary and without the advice of competent counsel" because counsel "failed to conduct any investigation into applicable fact and law before advising him to plead guilty . . ." (Doc. 66 at 7. See also Doc. 66-1 at 13-16).

- Ground 4 – He was "denied his Sixth Amendment right to the effective assistance of counsel . . ." (Doc. 66 at 8).

Moore's various grounds for relief challenge the knowing and voluntary nature of his guilty plea, the correctness of his sentence, and the alleged failure of his counsel to file an appeal as directed. Accordingly, the Court will first address Moore's arguments challenging his guilty plea, as the granting of relief on any such ground would moot any claim as to his sentence or appeal. In that same vein, a successful challenge to Moore's sentence would moot any challenge as to appeal.

### 1. Guilty Plea – Grounds 3 (1st part) & 4 (Subclaims A, E, I)

The first part of Ground 3 and certain sub-claims presented in Ground 4 argue a litany of challenges to his guilty plea. Any claim not challenging the voluntariness and intelligence of Moore's guilty plea is due to be denied, as such claims cannot be raised on collateral review. Moreover, any claims that do challenge the voluntariness and intelligence of Moore's guilty plea

record have been procedurally defaulted, as the record clearly reflects that Moore took no direct appeal of his conviction and sentence.

"A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992). See also United States v. Betancourth, 554 F.3d 1329, 1332 (11th Cir. 2009) (finding that an unconditional guilty plea waives all nonjurisdictional challenges to a defendant's conviction). Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984). Therefore, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569 (1989). See also Bousley v. United States, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' (quoting Brady v. United States, 397 U.S. 742, 748 (1970)).

Rule 11 of the Federal Rules of Criminal Procedure provides that the government and the defendant "may discuss and reach a plea agreement." Fed. R. Crim. P. 11(c)(1). A plea of guilty will be deemed voluntary, if before a guilty plea has been accepted, the "court address[es] the defendant personally in open court and determine[s] that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2). In the Eleventh Circuit, there is "a 'strong presumption' that statements made by the defendant during his plea colloquy are true." United States v. Cardenas, 230 F. App'x 933, 935 (11th Cir. 2007) (citing United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994)).

"[T]herefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'" Id. (quoting <u>United States v. Rogers</u>, 848 F.2d 166, 168 (11th Cir. 1988)).

> Without reasonably effective assistance of counsel in connection with the decision to plead guilty, a defendant cannot enter a knowing and voluntary plea because the plea does not represent an informed choice. Based upon his familiarity with the facts and law, defense counsel must advise the defendant. Counsel's advice need not be errorless, and need not involve every conceivable defense, no matter how peripheral to the normal focus of counsel's inquiry, but *it must be within the realm of competence demanded of attorneys representing criminal defendants.*

> The Supreme Court has recognized that the decision to plead guilty may occur without all of the state's evidence and necessarily takes place without knowledge of all facts revealed by witnesses at trial . . . An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each.

<u>Stano v. Dugger</u>, 921 F.2d 1125, 1151 (11th Cir. 1991) (*en banc*) (citations and quotations omitted).

> The <u>Strickland</u> test applies to challenges of guilty pleas, as well as to convictions by jury. <u>Hill v. Lockhart</u>, 474 U.S. 52, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). In this context, the first prong of <u>Strickland</u> requires the defendant to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. <u>See</u> <u>id.</u> at 369–70. The second prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process," meaning the defendant must show "a reasonable probability that, but for counsel's errors," he would have entered a different plea. <u>Id.</u> at 370 (stating the test in the context of an accepted guilty plea); <u>see also</u> <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991) (applying the test to a rejected plea agreement).

<u>Scott v. United States</u>, 325 F. App'x 822, 824 (11th Cir. 2009).

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the

alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. See, e.g., Evans v. Meyer, 742 F.2d 371, 375 (CA7 1984) ("It is inconceivable to us ... that [the defendant] would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received"). As []explained in Strickland v. Washington, []these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." Id., 466 U.S., at 695, 104 S. Ct., at 2068.

Hill v. Lockhart, 474 U.S. 52, 59-60 (1985).

[This Circuit] ha[s] held that "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984). "To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client. Id. "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to attack if the defendant did not correctly assess every relevant factor entering into his decision." Id. at 1509.

Brown v. Florida Atty. Gen., 230 F. App'x 896, 899 (11th Cir. 2007)

However, "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review . . . Indeed, 'the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.' " Bousley, 523 U.S. at 621 (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)). Accord United States v. Davis, Crim. No. 08-0052-CG, 2010 WL 5239243, at *4-5 (S.D. Ala. Nov. 22, 2010) (Nelson, M.J.), report and recommendation adopted, Crim. No. 08-0052-CG, 2010 WL 5239242 (S.D. Ala. Dec. 14, 2010) (Granade, J.) (applying Bousley in finding procedurally defaulted petitioners contentions that "his guilty plea was not knowing and voluntary because he did not understand the nature of the charge" and "that his attorney failed to

investigate the evidence" because petitioner took no direct appeal).

Because Moore did not directly appeal his conviction, any challenge to the voluntariness and intelligence of his guilty plea has been defaulted. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice or that he is actually innocent." Id. at 622 (citations and quotation marks omitted).[6] Moore does not argue that he is "actually innocent" of the offense to which he pled guilty.[7] However, Moore has argued, as a separate habeas claim, that his trial counsel was ineffective for failing to file a notice of appeal as instructed. "Ineffective assistance of counsel . . . is cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 488 (1986). Moreover, prejudice is presumed when counsel fails to file an appeal that a defendant expressly requested. See Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000). This is the only argument apparent from the record that could show "cause" and "actual

---

[6] Though Moore makes some assertions that his plea was "coerced" due to his attorneys' alleged failures to investigate and erroneous advice as to the maximum sentence he would face if he pled guilty, a close reading of these arguments indicates that they address the intelligence of Moore's guilty plea and thus must have first been raised on direct appeal. See Bousley, 523 U.S. at 621-22 ("In this case, petitioner contested his sentence on appeal, but did not challenge the validity of his plea. In failing to do so, petitioner procedurally defaulted the claim he now presses on us. []In an effort to avoid this conclusion, petitioner contends that his claim falls within an exception to the procedural default rule for claims that could not be presented without further factual development. . . . In Waley v. Johnston, 316 U.S. 101, 62 S. Ct. 964, 86 L. Ed. 1302 (1942) (per curiam), we held that there was such an exception for a claim that a plea of guilty had been coerced by threats made by a Government agent, when the facts were 'dehors the record and their effect on the judgment was not open to consideration and review on appeal.' Id., at 104, 62 S. Ct., at 966. Petitioner's claim, however, differs significantly from that advanced in Waley. He is not arguing that his guilty plea was involuntary because it was coerced, but rather that it was not intelligent because the information provided him by the District Court at his plea colloquy was erroneous. This type of claim can be fully and completely addressed on direct review based on the record created at the plea colloquy.").

[7] Moreover, "[t]o establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." Id. While Moore presents a number of arguments challenging the sufficiency of the evidence on which his conviction was based, he has presented nothing suggesting "factual innocence."

prejudice" excusing Moore's failure to challenge his guilty plea on direct appeal.

Even assuming that Moore can overcome this procedural default, however, the Court finds Moore's various challenges to the voluntariness and intelligence of his guilty plea to be meritless. The record reflects that at Moore's guilty plea hearing, the Court engaged him in a colloquy under oath that included the following questions and answers:

THE COURT: Have you had any problem communicating with your attorney?

MR. MOORE: No, ma'am.

. . .

THE COURT: Are you fully a satisfied with the advice and representation of your attorney?

MR. MOORE: Yes, ma'am.

. . .

THE COURT: Now, each of you are pleading pursuant to a plea agreement. Did you go over that plea agreement and discuss it with your attorney before you signed it?

MR. MOORE: Yes, ma'am.

. . .

THE COURT: Okay. And my understanding of your plea agreement is that in return for your guilty plea to count one the government is going to recommend that you be sentenced at the low end of the guidelines. Also included in your plea agreement is a provision that if you substantially cooperate that the government will ask that I go below those guidelines. Is that the way you understand your plea agreement?

MR. MOORE: Yes, ma'am.

. . .

THE COURT: The plea agreement also provides that you are waiving your right to appeal the sentence that I give you. Do you understand that?

MR. MOORE: Yes, ma'am.

. . .

THE COURT: Okay. Now, you are pleading, Mr. Moore, to a count that, in your case, carries a penalty of up to 10 years to life, $8 million fine and 8 years supervised release and hundred dollars special assessment. Do you understand that?

MR. MOORE: Yes, ma'am.

. . .

THE COURT: Okay. Now, there are sentencing guidelines that apply to each of your cases. Have you gone over those guidelines with your attorney?

MR. MOORE: Yes, ma'am.

. . .

THE COURT: You understand that they are just advisory and I'm not required to follow those?

MR. MOORE: Yes, ma'am.

. . .

THE COURT: Now, you each have a right to continue in your plea of not guilty. We'll have a trial. At trial you will be presumed innocent. The government would have to prove your guilt beyond a reasonable doubt. At trial you would have the right to the assistance of counsel. You would have the right to cross-examine the government witnesses. You would have the right to choose to testify or not testify. If you chose not to testify that fact could not be used against you. You would have the right to choose to compel witnesses to attend the trial on your behalf. But do you understand by pleading guilty today you are giving up those rights and trial and there will not be a trial?

MR. MOORE: Yes, ma'am.

. . .

THE COURT: Is that what you want to do?

MR. MOORE: Yes, ma'am.

. . .

(Guilty Plea Trans., Doc. 72 at 5-9).

In the first part of Ground 3, Moore claims:

> In reviewing the discovery materials, Moore noticed a number of inconsistencies with respect to state records/evidence and federal records/evidence. Moore brought these inconsistencies to attorney Gregory Hughes, who refused to investigate the facts and law involved . . . Attorney Hughes told Moore that he had no choice but to plead guilty and cooperate else he would be sentenced to 40 years following a jury trial . . . Because attorney Hughes would not conduct any investigation of the facts/matters as cited herein, and, would not investigate for plausible lines of defenses, Moore, against his will, plead guilty.

(Doc. 66-1 at 13-14).

Moore essentially repeats these allegations in Ground 4, Subclaim A, adding: [A]fter identifying all discrepancies, Moore notified attorney Hughes and specifically requested that he conduct an investigation into the facts and matters regarding the discrepancies. Attorney Hughes, for no known reason, refused to investigate as requested." (Doc. 66-1 at 18). He then lists a number of items that Hughes would have "learned" had he "conducted a [sic] adequate investigation. . ." (Id. at 19-22). More concludes Subclaim A by stating in conclusory fashion that "[t]he failure of attorney Hughes to investigate and uncover this material evidence with which a viable defense could have been developed, cannot be deemed reason [sic] under the circumstances . . ." (Id. at 22).

In Ground 4, Subclaim E, Moore also alleges that Moore told Hughes "that something was defective with the state's evidence/prosecution, because, when the state trial attorney pressed for a trial, the case was transferred to federal authorities for prosecution. However, []attorney Hughes . . . would not communicate with the state trial attorney." (Id. at 24).

Moore's own allegations belie any assertion that his plea was rendered unknowing and/or involuntary by any alleged failure to investigate by Hughes. Even taking all of Moore's allegations as true, the record establishes that, when he pled guilty, Moore was aware 1) that

there were the numerous "inconsistencies" in the evidence that he had noted while reviewing discovery, 2) that there was "something was defective" with his parallel state court criminal proceedings, 3) that he had made Hughes aware of these "inconsistencies" and the defective "something," and 4) that Hughes was not investigating these claims to his liking and continued to advise Moore to plead guilty.[8]  If Moore was dissatisfied with Hughes's performance, he could have refused to proceed with his guilty plea, insisted that Hughes conduct a more thorough investigation, and ultimately tested the inconsistencies at trial.  If Hughes had continued to not perform to Moore's liking, Moore could have attempted to request appointment of new counsel to represent him.  Instead, being aware of all of these alleged problems at the time, Moore proceeded with his guilty plea, advising the Court under oath that he was satisfied with Hughes's performance and that it was his desire to plead guilty.  Moore has presented nothing to overcome the strong presumption that these sworn statements were true.  See, e.g., Cardenas, 230 F. App'x at 935 ("Nothing in the record shows that Cardenas has satisfied his burden of showing that his sworn statements made during the plea colloquy-including that no one had predicted what sentence he would receive-were false; and we reject his claim that his guilty plea was involuntary.").  Moreover, Moore has not demonstrated that he was prejudiced by any failure of Hughes to investigate, as he has not alleged "that discovery of the evidence would have led counsel to change his recommendation as to the plea[,]" nor has he demonstrated "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.

In Ground 4, Subclaim I, Moore also argues that his plea was invalid because he was not

---

[8] The Court believes it is more accurate to state that Hughes considered all that Moore told him but ultimately made a professional judgment that none of it was worth pursuing.  Moore has certainly made no attempt to enlighten the Court as to what "viable defense" Hughes's investigation of his claims would have brought to light.

accurately advised of the possible sentencing range he was facing.  The Court finds that some procedural history is necessary to address this claim.

Count One of the indictment charged that "[t]he quantity of crack cocaine involved in the conspiracy exceeded 28 grams; thus, the defendants are subject to the penalty provisions of Title 21, United States Code, Section 841(b)(1)(B)."  (Doc. 1 at 1-2).[9]  On October 7, 2011, Moore filed his notice of intent to plead guilty to Count One.  (Doc. 28).  Contemporaneously, Moore filed the signed Plea Agreement and Factual Resume.  (Docs. 29-30).  Counsel for the Government signed the Factual Resume on October 4, 2013, and the Plea Agreement on October 5, 2013, while Moore signed both documents on October 6, 2013 (Hughes, who only signed the Factual Resume, signed it the same day as Moore).  The Factual Resume, as typed, originally stated that the total amount of crack involved in the conspiracy charged in Count One (which was an aggregate of the amounts involved in the offenses charged in Counts Two through Eight) was 36.56 grams.  (Doc. 30 at 2).  However, the typed amount of "36.56" grams was scratched through and the amount of "26.38" grams was handwritten in its place.  Hughes's ("W.G.H.") and Moore's ("R.L.M.") initials are handwritten next to this alteration.

The "Penalty" provision of the Plea Agreement was not altered to take the crack cocaine reduction into account and appeared to continue to reflect the penalties provided for in § 841(b)(1)(B), stating, *inter alia*: "The maximum penalty the Court could impose as to Count 1 of the Indictment is . . . 5 years mandatory minimum to a maximum of 40 years imprisonment . . . However, based upon the Enhancement Information, filed by the United States in the case, the

---

[9] Title 21 U.S.C. § 846, the basis for the offense charged in Count One and to which Moore pled guilty, states: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  Count One charged Moore with conspiring to commit a violation of § 841(a)(1).

defendant is subject to a minimum mandatory ten years confinement to life imprisonment on Count One . . ." (Doc. 29 at 4, ¶ 11).

At Moore's guilty plea hearing held October 18, 2013, the Court, noting "something odd about the factual resume," questioned Hughes about the quantity of crack cocaine for which Moore would take responsibility, asking: "[I]s it 29.48 or is it 26.38 or is it what's in the indictment." (Doc. 72 at 2). Hughes responded: "It's 29.48." (Id.). The Court then proceeded with its standard guilty plea colloquy under Federal Rule of Civil Procedure 11, in which it advised Moore if he understood that the offense to which he was pleading "carries a penalty of up to 10 years to life[,]" to which Moore responded: "Yes, ma'am." (Id. at 7). When asked to provide "the elements and the facts" supporting the offense, the Government also stated that "[t]he total amount of the controlled buys, the total amount of crack cocaine purchased was 29.48 grams of crack cocaine." (Id. at 10). When asked if he "agreed the government could prove those facts against" him, Moore responded: "Yes." (Id. at 10-11).

However, despite the parties' agreement to 29.48 grams at the guilty plea hearing, the final Presentence Investigation Report stated that "[t]he government and the defendant are in agreement that the defendant is accountable for 26.38 grams of crack cocaine." (Doc. 55 at 4, ¶ 13). No objections to the report were made, and 26.38 grams was ultimately the quantity of crack cocaine applied by the Court at sentencing, thus subjecting Moore to a maximum of 30 years in prison.

Moore now claims he "was led to believe that he faced a maximum possible penalty of 40 years, and with the enhancement, life, when all the time he could not have faced more than 30 years. Thus, Moore did not have a full understanding of the consequences of the plea, as he was significantly misinformed." (Doc. 66-1 at 27. See also Doc. 75 at 6-7). However, Moore is

incorrect in his belief that "he could not have faced more than 30 years" if he was found guilty at trial. As set forth above, Count One charged him with conspiracy involving more than 28 grams of crack, thus subjecting him to the penalty provisions of 21 U.S.C. § 841(b)(1)(B). Section 841(b)(1)(B) states, in relevant part: "In the case of a violation of [21 U.S.C. § 841(a)] involving 28 grams or more of [crack cocaine,] such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years . . . If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment . . ." It was only by pleading guilty that Moore was allowed to accept responsibility for an amount of crack cocaine less than 28 grams, thus ultimately at sentencing subjecting him to the penalty provisions of § 841(b)(1)(C): "a term of imprisonment of not more than 20 years[,]" or 30 years for one who "commits such a violation after a prior conviction for a felony drug offense has become final . . ." Thus, had he not pled guilty, Moore faced the possibility of being sentenced to a term of imprisonment up to 40 years.[10]

Federal Rule of Criminal Procedure 11(b)(1) requires that, "[b]efore the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands," *inter alia*, "any maximum possible penalty, including imprisonment, fine, and term of supervised release [and] any mandatory minimum penalty . . ." Fed. R. Crim. P. 11(b)(1)(H)-(I). However, "[a] variance from the

---

[10] Moore appears to argue elsewhere in his filings that the Government allowing him to plead guilty to an amount of crack cocaine less than 28 grams amounts to a "concession" by the Government that it could never have proven over 28 grams at trial. This belief is erroneous. It is a common and accepted practice for the Government to allow a criminal defendant, as part of a plea deal, to accept responsibility for a drug amount less than the one charged so as to avoid penalty enhancements dependent on drug quantity.

requirements of [Rule 11] is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h). To the extent Moore feels he was misadvised as to the maximum and minimum penalties he faced for the offense <u>to which he pled guilty</u>, the Court finds that Moore's substantial rights were not affected, as he was ultimately subject to a sentencing range <u>less</u> than that which he believed he would face.

For the above-stated reasons, the Court finds that Moore has failed to demonstrate that his guilty plea was not voluntary or knowing and is thus due no relief as to any claim attacking his conviction.

### 2.   Withdraw Guilty Plea - Grounds 3 (2nd part) & 4 (Subclaims B, C, F)

Moore claims that attorney Maddox was retained after Moore's guilty plea "for the specific purpose of reviewing the discovery materials, and assistiing [sic] him in withdrawing his guilty plea." (Doc. 66-1 at 23). Moore avers that "Maddox specifically told [him] that he would move to withdraw my guilty plea, whereas, we would start all over . . ." (Doc. 67-1). The record reflects that no motion to withdraw Moore's guilty plea was ever filed. Moore now argues that Maddox "refused to investigate and move to withdraw the guilty plea, as requested" and that he "abandoned Moore's efforth [sic] to have his guilty plea withdrawn and investigating for trial defenses." (Doc. 66-1 at 14). He argues that Maddox's alleged failures constitute ineffective assistance of counsel under <u>Strickland</u>. (Ground 4, Subclaim C, Doc. 66-1 at 23-24).[11]

First, the Court finds that the record belies Moore's claim that Maddox, against Moore's express wishes, failed to file a motion to withdraw the guilty plea. In a letter to the Court dated July 11, 2013 (which has been docketed as a supplemental reply) (Doc. 79), Moore provides

---

[11] Moore also argues that such allegations "cannot support a conclusion that Moore's guilty plea was entered voluntary and intelligent [sic]." (Doc. 66-1 at 15). That Moore may have had second thoughts, after the fact, about pleading guilty does not bring the knowing and voluntary nature of his plea into question.

factual clarification as to this claim, stating:

> [I]n my visit with Mr. Maddox he talked good told me what he could do and what he was going to do. Three weeks before sentenceing [sic] [Maddox] came back and told me he was still workin [sic] with the prosecutor and Agent Stallings. He also said he couldn't take my plea back and that if I could I probably shouldn't. He said we should go on with sentenceing [sic] and fight the gram weight and the extra points they was trying to add.

(Doc. 79 at 2). These statements indicate that, rather than abandon any attempt to withdraw Moore's guilty plea, Maddox determined that such was not feasible and not in Moore's best interest.

Moreover, when given the opportunity to speak at his sentencing hearing, Moore stated only as follows:

> Your Honor, I just want to supply -- Your Honor, I want to apologize to the Courts, to you, my family, my kids. And I want you to -- I'm asking you to have mercy on me today on my sentencing so I can have a chance to get back out to my kids and family and tried to guide them in the right direction from coming up to the road I travel. And I thank you.

(Doc. 73 at 5). Moore's words clearly indicate his recognition that he was present to be sentenced and that he wished to proceed. Moore gave the Court no indication that he wished to withdraw his guilty plea prior to the imposition of sentence.

Regardless, Moore has failed to establish either Strickland prong as to any failure by Maddox to file a motion to withdraw the guilty plea. "A pre-sentence motion to withdraw is to be liberally construed, but there is no absolute right to have a guilty plea withdrawn." United States v. Cesal, 391 F.3d 1172, 1179 (11th Cir. 2004) (citations and quotations omitted), cert. granted, judgment vacated, 545 U.S. 1101 (2005), opinion reinstated, 03-15090, 2005 WL 1635303 (11th Cir. July 13, 2005).

> Federal Rule of Criminal Procedure 11(d) provides that after the district court has accepted a defendant's guilty plea, and before sentencing, a defendant may withdraw his guilty plea if he "can show a fair and just reason for requesting the

withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In determining whether a defendant has met his burden to show a "fair and just reason," a district court "consider[s] the totality of the circumstances surrounding the plea," including whether: (1) "close assistance of counsel was available," (2) "the plea was knowing and voluntary," (3) "judicial resources would be conserved," and (4) "the government would be prejudiced if the defendant were allowed to withdraw his plea." United States v. Buckles, 843 F.2d 469, 471–72 (11th Cir. 1988) (quotation marks omitted).

"The good faith, credibility and weight of a defendant's assertions in support of a motion to withdraw a guilty plea are issues for the trial court to decide." [United States v. ]Brehm, 442 F.3d [1291,] 1298[ (11th Cir. 2006)] (quotation marks and alterations omitted). Additionally, there is a "strong presumption" that statements made by a defendant during the plea colloquy are true. United States v. Medlock, 12 F.3d 185, 187 (11th Cir.1994). As a result of this presumption, a defendant bears a heavy burden to show that his statements under oath were false. United States v. Rogers, 848 F.2d 166, 168 (11th Cir.1988).

United States v. Etienne, 520 F. App'x 915, 918-19 (11th Cir. 2013). Among other factors to consider "are the defendant's admission of factual guilt under oath at a plea hearing and the timing of the motion to withdraw." United States v. Cambronne, 263 F. App'x 802, 803 (11th Cir. 2008) (citing United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).

Though Moore makes a number of conclusory allegations regarding counsel's alleged failure to investigate pertinent facts and to communicate with state counsel regarding certain unspecified defects in his parallel state criminal proceedings, he makes little attempt to demonstrate that there existed "a fair and just reason for requesting the withdrawal" of his guilty plea prior to sentencing. The only specific basis he articulates is that, "[h]ad attorney Maddox conducted an investigation [into the backgrounds of agents involved in the investigation and who participated in the controlled buys], he would have learned that agent fnu McGuire, of the Task Force, had been arrested in early/mid 2012 and subsequently charged with possession of cocaine. Attorney Maddox would have further learned that agent McGuire participated in a number of controlled buys, and further, that his demise occurred after participating in the controlled busy

[sic]." (Doc. 66-1 at 23. <u>See also</u> 75 at 9-10).[12]

Considering the first three <u>Buckles</u> factors and others, it is readily apparent that the presentation of such evidence would not have served as a valid basis for withdrawal of Moore's guilty plea. Moore has presented no evidence or argument to show the falsity of his sworn statements at his guilty plea colloquy that he was "fully satisfied with the advice and representation of [his] attorney" and that the Government could prove the facts supporting a conspiracy conviction. (Doc. 72). Any evidence of McGuire's arrest would only have served to impeach and would not have addressed Moore's guilt or innocence.[13][14]

Moore has not articulated a conceivably successful basis for moving to withdraw his guilty plea, and Maddox will not be presumed ineffective for failing to file a baseless motion. Accordingly, Moore is due no relief on his claim regarding Maddox's failure to move to withdraw Moore's guilty plea.

---

[12] Moore also contends he told both Hughes and Maddox that "something was defective with the state's evidence/prosecution" in his parallel state criminal proceedings. (Doc. 66-1 at 24, Ground 4, Subclaims E & F). Moore has offered no further explanation as to what this "something" was or how it would have impacted his federal criminal proceedings.

[13] Cf. <u>Cambronne</u>, 263 F. App'x at 804 ("Cambronne eventually pleaded guilty, but, at the sentencing hearing, he sought to withdraw his plea, claiming that after the suppression hearing, he and his attorney learned that the tow-truck driver discovered the bottle of crack cocaine in the course of preparing to tow the car and called the police to recover it. Cambronne argues that this casts doubt on the detectives' veracity at the suppression hearing, as they omitted mention of the tow-truck driver's involvement in the discovery of the crack cocaine. Cambronne's request to withdraw his guilty plea came approximately one month after speaking to the tow-truck driver. []In rejecting Cambronne's motion to withdraw his guilty plea, the court noted that the truck driver's testimony would not address Cambronne's guilt or innocence in the case. The district court noted the seeming misconduct of the detectives but denied Cambronne's motion on the basis of his admission of factual guilt and the fact that the new evidence would not affect the 'result,' presumably of a new suppression hearing. We find no error in the district court's ruling as Cambronne does not explain how the tow-truck driver's testimony would plausibly change the district court's denial of Cambronne's motion to suppress. Accordingly, the balance of the <u>Buckles</u> factors support the district court's ruling.").

[14] After Moore's Petition was taken under submission, Moore filed a motion to submit evidence of the criminal charges against McGuire in Alabama state court (Doc. 81). The Court **GRANTS** the motion, but consideration of the evidence does not alter the Court's decision as to Moore's claims involving McGuire.

### 3. Sentence

### A. Jurisdictional Argument (Ground 2, Subpart A)

In Subclaim A of Ground Two (Doc. 66-1 at 7-9), Moore argues that the Court lacked jurisdiction to enhance his sentence pursuant to 21 U.S.C. § 851 because various procedural requirements were not followed. Section 851 provides that "[n]o person who stands convicted of an offense under [Title 21, Ch. 13, Subchapter 1, Part D of the United States Code] shall be sentenced to increased punishment by reason of one or more prior convictions . . ." unless certain procedural requirements are met. § 851(a)(1). The requirement that at least some of these procedures be followed is jurisdictional. See Harris v. United States, 149 F.3d 1304, 1307 (11th Cir. 1998).

However, as the Government correctly notes, Moore was not subject to any such enhancement. Moore pled guilty to conspiracy in violation of 21 U.S.C. § 846 – specifically, conspiracy to commit the underlying offense of possession with intent to distribute a mixture or substance containing cocaine base ("crack cocaine") in violation of 21 U.S.C. § 841(a)(1). Both of these statutes are located in Title 21, Ch. 13, Subchapter 1, Part D of the United States Code. Moore pled guilty to possessing 26.38 grams of crack cocaine, and this amount was applied at sentencing. Section 841(b)(1)(C) provides that, for any person found guilty of a violation of § 841(a)(1) involving less than 28 grams of crack cocaine, such person shall be sentenced to a term of imprisonment of not more than 20 years . . ."[15] The statutory maximum is increased to 30 years "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final . . ." § 841(b)(1)(C). Moore was sentenced to 188 months, or a little over 15 ½ years, in prison, below the statutory maximum allowed for the amount of crack cocaine he pled

---

[15] As the Government correctly notes (see Doc. 74 at 1-2, 8), the Fair Sentencing Act of 2010, Pub. L. No. 111-120, 124 Stat. 2372 (effective Aug. 3, 2010), applied to the conduct charged in Count 1 of the indictment.

to <u>without</u> any enhancement for a prior conviction. As Moore was not "sentenced to increased punishment by reason of one or more prior convictions[,]" § 851 did not factor into Moore's sentence, and his claims based on that section are meritless.

**B.      Other Arguments (Ground 2, Subpart B; Ground 4, Subclaims B, D, G, H)**

Initially, the Court notes that Moore's Plea Agreement contains an appeal waiver, in which Moore "knowingly and voluntarily waive[d] the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255" and agreed that he would "not challenge his guilty plea, conviction, or sentence . . . in any district court or appellate court proceedings[,]" with the exception of "any sentence imposed in excess of the statutory maximum" or "any sentence which constitutes an upward departure or variance from the advisory guideline range." (Doc. 29 at 11, ¶ 20). "[I]n most circumstances a defendant's knowing and voluntary waiver of the right to appeal his sentence will be enforced by this circuit." <u>United States v. Bushert</u>, 997 F.2d 1343, 1350 (11th Cir. 1993). In order to enforce an appeal waiver, "[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." <u>Id.</u> at 1351. At his guilty plea hearing, the Court specifically asked Moore: "The plea agreement also provides that you are waiving your right to appeal the sentence that I give you. Do you understand that?" (Doc. 72 at 5-6). Moore responded, "Yes, ma'am." (<u>Id.</u> at 6).[16] The record reflects that Moore's sentence was not imposed in excess of the statutory maximum, nor was it an upward departure or variance from the advisory guideline range. Therefore, Moore has waived any non-jurisdictional challenges to his sentence.

---

[16] The Court has already determined that Moore's guilty plea was knowing and voluntary.

However, the Court will also address the merits of Moore's claims that the Court should not have treated him as a career criminal under § 4B1.1 of the United States Sentencing Guidelines because each of his prior convictions was "entered in violation of his constitutional rights . . . and are thus, invalid predicate offenses to support a Career Criminal enhancement." (Ground 2, Subpart B, Doc. 66-1 at 11). In support, Moore cites to United States v. Walker, 198 F.3d 811, 813 (11th Cir. 1999) (adopting the holding of other circuits, decided after Custis v. United States, 511 U.S. 485 (1994), that "a district court may reopen and reduce a federal sentence, once a federal defendant has, in state court, successfully attacked a prior state conviction, previously used in enhancing the federal sentence").

First, as the Government notes, Moore "concedes that this claim is not ripe for review at this time," as it is contingent on the outcomes of the post-conviction motions he has filed in state court challenging the constitutionality of each conviction. (Doc. 66-1 at 12). However, even if this claim was ripe for review, Moore would be due no relief, as any erroneous guideline application does not implicate a constitutional concern cognizable on collateral review. This Court has previously addressed a similar argument as follows:

> In bringing this action, Raine claims that the length of his sentence was based on a prior state court conviction that has since been vacated, resulting in a sentence that is now too long. Petitioner has produced a copy of the order, entered on September 15, 2011, in which a Circuit Court Judge in Jackson County, Mississippi, decreed that Raine's felony bad check conviction was vacated. Raine asserts that with this vacation, his re-sentencing should be for a shorter period of time.
>
> As support for his argument, Petitioner points to United States v. Walker, 198 F.3d 811, 814 (11th Cir. 1999). Walker concerned a criminal defendant sentenced under the Armed Career Criminal Act (hereinafter ACCA ) who, in a § 2255 action, got his federal sentence reduced after successfully having one of the state court convictions, on which his original sentence had been based, vacated. The Court finds, however, that Walker is inapplicable here as Raine was not sentenced under the ACCA, an enhancement provision. See Johnson[v. United States], 544 U.S. [295,] 303–08[ (2005)].[FN2]

<u>Johnson</u> expanded the reasoning of two prior decision, <u>Custis v. United States</u>, 511 U.S. 485 (1994) and <u>Daniels v. United States</u>, 532 U.S. 374 (2001), both ACCA cases[].[17]

The Government has responded by asserting that Raine's claim is not constitutional and, as such, is not cognizable on collateral review. The Court notes that "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a ' "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure .' ' " <u>Burke v. United States</u>, 152 F.3d 1329, 1331 (11th Cir. 1998) (quoting <u>Reed v. Farley</u>, 512 U.S. 339, 348, (1994) (quoting <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962)) (alteration in original)).

In this action, Raine's claim concerns the calculation of criminal history points. With the vacation of the State conviction, Respondent acknowledges that the criminal history points would be lower and the criminal history category under which he would be sentenced would also be lower, leading to a lower sentencing range. However, this change in circumstance does not rise to a constitutional or statutory challenge as Petitioner was sentenced under advisory sentencing guidelines; the guidelines are not statutory. <u>See Gilbert v. United States</u>, 640 F.3d 1293, 1307 (11th Cir. 2011) (*en banc*) (citations omitted).

The Court also notes that Raine's sentence was well below the maximum sentence that could have been imposed against him. Specifically, as noted in the sentencing report, the maximum sentence Petitioner could have received for attempting to commit bank fraud (count one) was thirty years imprisonment while the maximum sentence for possession of a counterfeit security check (count two) was ten years.

The Government has pointed to <u>Ayuso v. United States</u>, 361 Fed. Appx. 988 (11th Cir. 2010), as being instructive. In <u>Ayuso</u>, the claimant filed a § 2255 action in an attempt to get resentenced after getting a state court criminal conviction, which had been used to enhance his federal sentence, vacated. The Eleventh Circuit Court of Appeals held that Ayuso's claim was not constitutional and did not arise to the level of a miscarriage of justice, making it not cognizable under § 2255, before determining that the claim was also of no merit.

As in <u>Ayuso</u>, Raine has raised neither a constitutional claim nor a statutory challenge in bringing this action. Furthermore, Petitioner has made no showing of a miscarriage of justice as he was sentenced well below the sentence that he could have received for the charges to which he pled guilt. Therefore, the Court finds that Raine has not brought a claim recognized under § 2255.

---

[17] Moore has cited to <u>Daniels</u>, <u>Custis</u> (though incorrectly as "<u>Curtis</u>"), and <u>Walker</u> as support for his claim regarding his career criminal guidelines enhancement. (Doc. 66-1 at 12).

Raine v. United States, Civ. A. No. 12-0100-WS-M, 2012 WL 5869117, at *2-3 (S.D. Ala. Oct.

25, 2012), report and recommendation adopted, 2012 WL 5869113 (S.D. Ala. Nov. 19, 2012)

(Steele, C.J.) (record citations and some footnotes omitted).[18]

Unlike the Raine petitioner, Moore has not yet even succeeded in getting any of his prior

convictions vacated.  Though Moore claims that the underlying convictions themselves are

unconstitutional, he presents no substantive argument to support this bald assertion.  At any rate,

as was previously stated, Moore's sentence was below the statutory maximum, and the use of

these underlying convictions in calculating Moore's criminal history points under the sentencing

guidelines does not implicate a constitutional concern or a miscarriage of justice.  Accordingly,

Moore's claims concerning the application of U.S.S.G. § 4B1.1 are meritless.

For the foregoing reasons, the Court finds that Moore is due no relief as to any claim

challenging his sentence.

---

[18] See also King v. United States, No. 2:11CV186-MEF, 2013 WL 1857689, at *3 (M.D. Ala. Apr. 3, 2013), report and recommendation adopted, 2013 WL 1858085 (M.D. Ala. May 2, 2013) ("Citing United States v. Walker, 198 F.3d 811 (11th Cir. 2000), King argues that this court should reopen and reduce his federal sentence because his 1997 felony conviction that was 'reduced' by the state court in March 2011 to a misdemeanor was considered as a felony conviction in the sentencing guidelines calculation for his 2005 federal bank fraud convictions . . . even assuming that King's 1997 conviction should be treated, *nunc pro tunc,* as a misdemeanor, treatment of that conviction as a felony in his sentencing guidelines calculation did not result in a sentence "in excess of the maximum authorized by law"—the concern in *Walker.* As such, any sentencing "error" in King's case was, at most, a guidelines application error (and it can only be deemed an error in hindsight) . . . The Eleventh Circuit has stated that a 'claim that a sentencing guidelines provision was misapplied ... is not a constitutional claim. If it were, every guidelines error would be a constitutional error.' Gilbert v. United States, 640 F.3d 1293, 1321 (11th Cir. 2011) (en banc). See also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004); Burke v. United States, 152 F.3d 1329, 1331–32 (11th Cir. 1998). In addition, the Eleventh Circuit has made clear that an error in application of the sentencing guidelines does not constitute a 'fundamental miscarriage of justice' and may not constitute a basis for a claim of 'actual innocence.' Gilbert, 640 F.3d at 1306; McKay v. United States, 657 F.3d 1190, 1200 (11th Cir. 2011); Bido v. United States, 438 Fed. App'x 746, 748 (11th Cir. 2011); Orso v. United States, 452 Fed. App'x 912, 914–15 (11th Cir. 2012). Errors in application of the sentencing guidelines are subject to procedural default as long as the sentence imposed does not exceed the statutory maximum sentence that would have been applied absent the error. Gilbert, 640 F.3d at 1306. As noted, treatment of the King's 1997 state conviction as a felony did not alter the statutory maximum sentence for his bank fraud convictions. Consequently, § 2255 does not provide King with a vehicle to reopen his federal sentence to have his sentencing guidelines recalculated.").

### 4. Failure to File Appeal (Ground 1)

As to this claim, Moore asserts that "he was denied his constitutional right to appeal his sentence by counsel's failure to file a requested appeal and/or by counsel's failure to constitutionally consult him regarding an appeal[,]" as Moore "specifically requested an appeal which was never filed." (Doc. 66 at 4). In an affidavit submitted with his Petition, Moore avers: "[I]mmediately following sentencing, I told attorney Maddox that I wanted to appeal . . . [A]ttorney Maddox told me that he would appeal, as requested . . . [A]ttorney Maddox provided a form for me to sign stating that I wanted to appeal . . . I subsequently learned that no appeal had been filed as requested . . . [H]ad I known that attorney Maddox was not going to file the appeal, as requested, I would have dons [sic] so myself." (Doc. 67-1 at 4). Moore has substantially repeated these assertions in a letter to the Court dated July 11, 2013 (Doc. 79 at 3-4), which was received after the Petition was taken under submission.

In response, the Government points to the Notice of Non-Appeal (Doc. 63) filed after Moore's sentencing, which states, in relevant part:

> I have been advised by the Court and by my attorney of my right to appeal my conviction and sentence. I have consulted with my attorney, who has explained the advantages and disadvantages of taking an appeal. I have had sufficient time to consider my options and require no further explanation. After consideration, it is my desire to inform the Court that I do not wish to take an appeal.

Moore's signature appears below this passage, and the signature is dated "6-15-12," the day of Moore's sentencing. In reply to the Government's argument, Moore again references the above-stated passages from his affidavit and claims "that the only document he signed was the one in which attorney Maddox provided him, and that without reading the document, he signed it." (Doc. 75 at 2). Moore further suggests:

To the extent that the government suggests that the document Moore signed was a Notice of Non-Appeal, as opposed to what attorney Moddox [sic] purported the document to be, then fraud has clearly been made upon this court. Immediately following sentencing, attorney Maddox knew that Moore was extremely upset and adamently [sic] demanded that an appeal be filed. Thus, if attorney Maddox took advantage of Moore's mental state to have him sign the Notice of Non-Appeal, misleading him into believing that it was a document to file an appeal, then a further grave miscarriage of justice has occurred.

(Doc. 75 at 2). Based on these representations, Moore argues that at the very least he is entitled to an evidentiary hearing as to this issue. He notes that the Government has submitted no affidavit or other statement from Maddox with its Response.

In Roe v. Flores-Ortega, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), the Court applied the Strickland test to a claim involving an attorney's failure to file an appeal for a client.

The Court first reaffirmed the well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se. Id. at 477, 120 S. Ct. at 1035 (citing Rodriquez v. United States, 395 U.S. 327, 89 S. Ct. 1715, 23 L. Ed. 2d 340 (1969)) . . .

As to the second prong of the Strickland test, the Flores-Ortega Court held that the failure to file an appeal that the defendant wanted filed denies the defendant his constitutional right to counsel at a critical stage. Id. at 483, 120 S. Ct. at 1038. In such cases, prejudice is presumed because rather than being denied the opportunity for a fair proceeding, the defendant is denied the opportunity for a proceeding at all. Id. (citing Smith v. Robbins, 528 U.S. 259, 286, 120 S. Ct. 746, 765, 145 L. Ed. 2d 756 (2000); Penson v. Ohio, 488 U.S. 75, 88-89, 109 S. Ct. 346, 354, 102 L. Ed. 2d 300 (1988); United States v. Cronic, 466 U.S. 648, 659, 104 S. Ct. 2039, 2047, 80 L. Ed. 2d 657 (1984)). Accordingly, to satisfy the prejudice prong of the Strickland test, a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed. Flores-Ortega, 528 U.S. at 484, 120 S. Ct. at 1038.

Gomez-Diaz v. United States, 433 F.3d 788, 791-92 (11th Cir. 2005). "The reasoning in Flores-Ortega applies with equal force where, as here, the defendant has waived many, but not all, of his appellate rights." Id. at 793.

In Gomez–Diaz v. U.S., 433 F.3d 788 (11th Cir. 2005), the Court of Appeals vacated and remanded a district court's denial of habeas relief on a claim that

counsel for a criminal defendant failed to file an appeal as requested by defendant, holding that prejudice is presumed in such a situation, regardless of whether the defendant can identify any arguably meritorious grounds for appeal that would fall outside the appeal waiver. Id., at 793. Similarly, in U.S. v. Pliego–Duarte, 199 Fed. Appx. 855 (11th Cir. 2006)(*citing* Gomez–Diaz), the Court of Appeals reversed the denial of a § 2255 motion where the district court had found no prejudice resulting from counsel's failure to file an appeal. Defendant had signed an appeal waiver in the written plea agreement; however, the Court of Appeals found that, as defendant had waived most, but not all, of his appellate rights, prejudice would be presumed and defendant would be entitled to an out-of-time direct appeal. Id.

United States v. Burgess, Crim. A. No. 08-0225-KD, 2011 WL 2412579, at *5 (S.D. Ala. June 15, 2011) (Nelson, M.J.) (finding "that an evidentiary hearing is necessary to resolve the claim by petitioner that he requested his counsel to file a notice of appeal on his behalf and that counsel failed to do so").

Upon consideration of the pleadings, the Court finds that an evidentiary hearing is necessary to resolve Moore's claim that he requested his counsel to file a notice of appeal on his behalf and that counsel failed to do so. Moore has submitted a sworn statement stating that immediately after sentencing he told his attorney, Maddox, he wanted to appeal, that Maddox told Moore he would appeal and provided him a form to sign stating that Moore wanted to appeal, and that had Moore known Maddox was not going to file an appeal he would have done so himself. As to the Notice of Non-Appeal, Moore does not deny that his signature is on the document but claims that he did not read it and instead relied on Maddox's representations that he would file an appeal. The Government has presented no evidence to contradict these assertions.[19]

---

[19] The Government has cited to the Court's opinion in Woods v. United States, Civ. A. No 08-0737-KD, 2009 WL 3062456 (S.D. Ala. Sept. 17, 2009) (DuBose, J. (adopting recommendation of Cassady, M.J.)), in which the Court denied relief as to a § 2255 petitioner's claimed that his counsel had disregarded his express wishes and failed to file a notice of appeal. Woods, however, is distinguishable from the instant action. In Woods, the Court, noting inconsistencies in the petitioner's allegations, determined that the petitioner's actual claim was that his attorney wrongfully talked him out of filing an appeal:

With [the <u>Roe</u> standards] in mind, the undersigned now turns to Woods' claim that he "expressly advised his attorney that he was dissatisfied with the sentencing proceeding and that he ... wanted to have an appeal filed," believing that the "guideline enhancement for 300 grams or more of crack cocaine, when the jury [only] found [him] guilty of 50 grams or less" should not have come to bear on his situation. (Doc. 461, p. 2.) This discrepancy, Woods contends, was not the product of due process of law, and is therefore unconstitutional. After Ms. Jones allegedly failed to file a notice of appeal, Woods contends that she effectively "abandoned" her client. (*Id.* at 6.)

In his amended petition, though, Woods argues that Ms. Jones, "unfortunately misunderstood" him regarding his desire to appeal. (Doc. 468, ¶ 3.) As part of this seemingly contradictory assertion, Woods contends later in the document that Ms. Jones "wrongly convinced [him] that he could get more time if he appealed," advice which caused Woods to "involuntarily, unknowingly, and unintelligently waive his right to pursue an appeal ." (*Id.* at 6.)

These statements combine to support Ms. Jones' written statement that she did indeed have a conference with Woods about whether to file an appeal—and that Woods decided that not doing so was in his best interest. It is also noteworthy that Judge Dubose directly informed Woods of his right to appeal during the sentencing hearing and explained that if he did not wish to appeal, he should file a notice of non-appeal. (Sentencing Transcript, p. 50.)

In <u>Roe</u>, . . . the Court mentioned that "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." <u>Roe</u>, 528 U.S. at 477 (emphasis in original). This is clearly the case regarding the situation before the undersigned, as Woods clearly told Mrs. Jones not to file an appeal; as already mentioned, this request has been memorialized in writing as the Notice of Non Appeal. Nevertheless, the Supreme Court provided additional support for the undersigned's position when it stated that when counsel has consulted with the defendant about an appeal, he or she "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." <u>Id.</u> at 478. When Woods claims that Mrs. Jones "wrongly convinced him" not to appeal, he is explicitly admitting that she consulted with him about that process. Importantly, the <u>Flores–Ortega</u> Court specifically defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." <u>Id.</u> It simply cannot be said, then, that Ms. Jones' performance was professionally unreasonable, as Woods both fails to make any allegation that he expressly directed her to file an appeal on his behalf *and* signed the notice of non-appeal before his attorney.

2009 WL 3062456, at *9-10. Though in the initial statement of Claim 1 Moore alleges generally that "he was denied his constitutional right to appeal his sentence by counsel's failure to file a requested appeal and/or by counsel's failure to constitutionally consult with him regarding an appeal," it is clear from reading Moore's briefs that he is specifically claiming that counsel failed to file an appeal as expressly instructed. Unlike in <u>Woods,</u> Moore has submitted a sworn statement averring that he expressly told his attorney immediately following sentencing that he wanted to appeal and that his attorney said that he would. Moore has also raised an issue of fact as to whether he knowingly signed the Notice of Non-Appeal. The Government has submitted no evidence to contradict Moore's assertions.

### c. Other Motions

After the Petition was taken under submission, Moore filed a several other motions (Docs. 76-78, 80). The Court will address them in turn.

### 1. "Motion to Expand or Amend" (Doc. 76)

On May 29, 2013, filed a "Motion to Expand or Amend" (Doc. 76), seeking to add two grounds for relief. Because the motion was filed within one year of the date that Moore's judgment of conviction became final, see n.4, *supra*, the Court will consider whether to allow Moore these additional grounds.

---

The three Texas district court cases cited in Woods and in the Government's response are similarly distinguishable. In two of these cases, which dealt with claims that counsel had failed to file a notice of appeal, the court determined that the petitioner had in fact conveyed to their counsel that they did not wish to appeal, based on evidence in addition to a signed Notice of Non-Appeal. See Flores-Diaz v. United States, 516 F. Supp. 2d 818, 830 (S.D. Tex. 2007) ("On June 23, 2004, Flores filed a Notice of Non–Appeal. Said notice, written in both English and Spanish, states: 'I am a defendant in this case, and I have now been sentenced. I know that I have the right to appeal to the Court of Appeals. I have discussed my case with my attorney and I have decided not to pursue an appeal.' Therefore, Ramos cannot be faulted for not filing a notice of appeal since Flores expressly conveyed he was not pursuing an appeal. **Moreover, Flores concedes he 'did not express a desire to appeal.'** Accordingly, any allegations related to appeal are foreclosed by Flores's notice of non-appeal and concession." (internal citations omitted)); Urbina-Espinoza v. United States, Civ. A. No. 5:05CV245, 2006 WL 2981189, at *1 (S.D. Tex. Oct. 12, 2006) ("Petitioner alleges that trial counsel failed to file a notice of appeal upon request. The record reveals that Petitioner filed a notice of non-appeal, which expressly reflects Petitioner's decision to forgo a direct appeal, and **confirms that he made that decision after discussing the matter with his attorney**. Therefore, this claim is meritless." (internal citations omitted)). In the third case, the petitioner claimed that counsel had failed to consult with him about the possibility of appeal. In disposing of this claim, the court noted that the petitioner had signed a notice of non-appeal and "that Petitioner fails to even *allege* that he would have so instructed his counsel to appeal" had he been consulted. Cezares-Sanchez v. United States, Civ. A. No. 5:05-CV-00118, 2006 WL 2238546, at *2 (S.D. Tex. Aug. 2, 2006). Moore has averred that he wanted to file an appeal and would have done so himself had he known Maddox was not going to do so.

The cases of Tinsley v. United States, Civ. A. No. 11-0726-KD-M, 2012 WL 3206454 (S.D. Ala. June 29, 2012), report and recommendation adopted, CIV. A. 11-0726-KD-M, 2012 WL 3206676 (S.D. Ala. Aug. 8, 2012) (DuBose, J.), and Harris v. United States, Crim. No. 08-00332-WS-B, 2011 WL 5597281 (S.D. Ala. May 12, 2011), report and recommendation adopted, Civ. A. No. 09-00671-WS, 2011 WL 5597263 (S.D. Ala. Nov. 17, 2011) (Steele, C.J.), to which the Government also cites, are also inapposite to Claim 1. Though both of those cases discussed Notices of Non-Appeal to some degree, neither dealt with a claim of trial counsel's failure to file an appeal as instructed.

"Under Rule 12 of the Rules Governing § 2255 Proceedings, a district court may apply the Federal Rules of Civil Procedure in a lawful manner consistent with the Rules Governing § 2255 Proceedings. Rule 15(a) permits a party to amend a pleading once 'as a matter of course at any time before a responsive pleading is served,' or, otherwise, 'only by leave of court or by written consent of the adverse party.' " Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003) (per curiam). See also Mayle v. Felix, 545 U.S. 644, 655 (2005) ("The Civil Rule governing pleading amendments, Federal Rule of Civil Procedure 15, made applicable to habeas proceedings by § 2242, Federal Rule of Civil Procedure 81(a)(2), and Habeas Corpus Rule 11, allows pleading amendments with 'leave of court' any time during a proceeding. See Fed. Rule Civ. Proc. 15(a). Before a responsive pleading is served, pleadings may be amended once as a 'matter of course,' i.e., without seeking court leave.").

Moore filed his "Motion to Expand or Amend" (Doc. 76) more than 21 days after the Government served its response to his initial Petition, and he did not obtain the Government's written consent to amend his Petition. Accordingly, Moore is required to obtain leave of the Court before filing an amended petition.

> When amendment is not permitted as of right, "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); see also Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003) (per curiam) (applying Rule 15(a) in the context of § 2255). A court must give a reason for denial of a motion to amend absent "any apparent or declared reason—such as such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962); see also id. (noting that the mandate to freely grant motions to amend "is to be heeded"). "[O]utright refusal to grant the leave [to amend] without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Id. . . .

Bellefleur v. United States, 489 F. App'x 323, 324 (11th Cir. 2012) (per curiam).

The first ground (Proposed Ground 5) Moore seeks to add claims that his counsel was ineffective for failing to move for dismissal of Count One of the indictment after Moore pled guilty to that count. This argument appears premised on Moore's belief that, by allowing Moore to plead guilty to possessing less than 28 grams of crack cocaine, "[t]he Government concede[d] that the 28 grams [charged in Count 1 of the indictment] could/would not have been proven." (Doc. 76 at 3). Moore asserts that, by charging a specific amount of crack cocaine in Count 1, the Government obligated itself to prove that amount as an element of the offense.

First, to the extent Moore challenges the sufficiency of the indictment itself, Moore cannot raise this claim on collateral attack. "Where there is an offense defined by a federal statute of which the court has jurisdiction and there is an endeavor to charge such offense by the indictment or information and the court acquires jurisdiction over the person of the defendant, the sufficiently of the indictment or information is not subject to collateral attack by habeas corpus or motion under § 2255 . . ." Rosecrans v. United States, 378 F.2d 561, 566 (5th Cir. 1967). Second, this argument is without merit. Count One charged, and Moore pled guilty to, the offense of conspiracy to commit a violation of 21 U.S.C. § 841(a)(1), specifically possession with intent to distribute crack cocaine. "A conviction under § 841 requires the government to prove that the defendant possessed a controlled substance knowingly and willfully and that he did so with the intent to distribute it . . . [B]ecause the specific amount and type of drugs are not elements of the offense, the government's failure to prove the amount or type charged in the indictment does not merit reversal" of such a conviction. United States v. Baker, 432 F.3d 1189, 1233 (11th Cir. 2005). "Drug quantity does not become an element of a § 841(a)(1) offense unless it is used to sentence the defendant beyond the statutorily prescribed maximum penalty. See United States v. Clay, 376 F.3d 1296, 1301 (11th Cir. 2004). The statutory maximum

penalty for a defendant convicted of cocaine distribution with no prior convictions and no drug quantity finding is 20 years' imprisonment. 21 U.S.C. § 841(b)(1)(C)." United States v. Hinds, 435 F. App'x 832, 835 (11th Cir. 2011). "Because the district court did not sentence [Moore] above the statutory maximum penalty, the government did not have to prove drug amounts in order to sustain the conspiracy conviction." Id. Therefore, Moore's counsel was not ineffective for failing to move for dismissal as to Count 1 on this basis.[20]

The second ground (Proposed Ground 6) Moore seeks to add is that his counsel was ineffective for failing to object to an alleged breach of the plea agreement by the Government when it sought a career criminal sentencing enhancement against Moore. Moore does not specifically point to what part of the plea agreement he accuses the Government of violating, instead claiming that he "believed that he stipulated in his plea contract the factors to be used in sentencing and believed that the C.C.A. would not be applied[ and b]elieved precluded the government from supporting the application of the career offender guidelines." (Doc. 76 at 5). According to Moore, "[t]he Government broadened the plea contract without the defendant's stipulation and therefore the C.C.A. is illegally applied." (Id.).

> "The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." United States v. Taylor, 77 F.3d 368, 370 (11th Cir. 1996). "Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992). However, "we cannot enforce an agreement that was never agreed on with specificity." United States v. Al–Arian, 514 F.3d 1184, 1193 (11th Cir. 2008) (quotation marks omitted).

United States v. Wilson, 517 F. App'x 844, 845-46 (11th Cir. 2013)

---

[20] Contemporaneous with the "Motion to Expand or Amend," Moore also filed a Motion to Dismiss the Indictment (Doc. 77) in his criminal action, based on the same argument presented in Proposed Ground 5. Because the Court has determined Proposed Ground 5 is meritless, the Motion to Dismiss the Indictment (Doc. 77) is due to be **DENIED**.

The Court finds that this claim, too, is without merit. The Eleventh Circuit rejected a similar claim by another petitioner:

> Taylor also contends the Government breached the plea agreement by requesting a term of supervised release in excess of the maximum specified in the plea agreement, requiring this Court to vacate his conviction and sentence.
>
> . . .
>
> The statement of the statutory maximum term of supervised release in the plea agreement was not a "promise" by the Government. Rather, the Government's promise was to recommend a sentence within the applicable Guidelines range as determined by the Court. The PSI determined that the applicable Guidelines range for supervised release was five years to life. Receiving no objections to the PSI, the district court adopted it. Accordingly, the Guidelines range for supervised release, as determined by the district court, was five years to life. The Government complied with its promise to recommend a Guidelines range sentence, as determined by the district court, because the lifetime term of supervised release recommended by the Government was within the applicable supervised release Guidelines range.

United States v. Taylor, 531 F. App'x 961, 963-64 (11th Cir. 2013) (applying "plain error" standard of review), cert. denied, 134 S. Ct. 833 (2013).[21]

---

[21] See also United States v. Cochran, 199 F. App'x 784, 785-86, 789-90 (11th Cir. 2006) ("Cochran argues on appeal that the government breached the plea agreement in which it agreed not to oppose a sentence for Cochran at the low end of the relevant guidelines range, by advocating a position inconsistent with a low end sentence. Specifically, Cochran objects to the government's adding facts about his offense and calling the district court's attention to them at his sentencing . . . In this case, the government did not breach the plea agreement. Cochran reasonably understood the agreement to require the government not to oppose a sentence at the low end of the guidelines range, and not to take a position contrary to that requirement. Similar to the plea agreement in United States v. Levy, Cochran's plea agreement did not bind the government to refrain from providing only certain factual information. See 374 F.3d 1023, 1030 (11th Cir. 2004) (per curiam), vacated on other grounds, Levy v. United States, 545 U.S. 1101, 125 S. Ct. 2542, 162 L. Ed. 2d 272 (2005). []Nothing prevented the parties from entering into a binding agreement that restricted the facts upon which the substantive offense was based. See [United States v. ]Boatner, 966 F.2d [1575,] 1578[ (11th Cir. 1992) (citing United States v. Nelson, 837 F.2d 1519, 1522-1525 (11th Cir. 1988)). The plea agreement here, however, stated that the government 'reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which the defendant pleads....' R1-24 at 9. As a result, Cochran should have understood the government's right to report facts about his offense. Therefore, the government did not breach the plea agreement by introducing the facts disclosed by its witness, Griggs, because the plea agreement gave the

Similar to the one in Taylor, the Plea Agreement in this action, the Government agreed to only to "recommend to the Court that [Moore] be sentenced at the low end of the advisory sentencing guideline range *as determined by the Court*." (Doc. 29 at 6, ¶ 18 (emphasis added)). The Government does not appear to have expressly reserved the right to advocate for a guideline enhancement; rather, it appears to have agreed to abide by whatever guideline determination the Court made. Moore agreed to his understanding that the "Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court." (Id. at 5, ¶ 13). The Plea agreement also stated: "The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and *information concerning the defendant's conduct and background* . . . Both the defendant and the United States are free to allocate fully at the time of sentencing." (Id., ¶¶ 14-15). Finally, the last paragraph of the Plea Agreement states that "[t]his document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all parties." (Id. at 12, ¶ 26).

A review of the sentencing transcript (Doc. 73) indicates that the Court, based on the Presentence Investigation Report prepared by the probation office, determined that Moore's guideline sentencing range was 188 to 235 months. The Government, though making some mention of Moore's criminal history, stood by its Plea Agreement by agreeing to a sentence at

---

government the right to report relevant factual information, including the totality of Cochran's criminal activities. See United States v. Carrazana, 921 F.2d 1557, 1569 (11th Cir. 1991).").

the low end of this Court-calculated guideline range, and the Court sentenced Moore to 188 months accordingly.  At no time during the sentencing hearing did the Government advocate for any sort of career criminal enhancement beyond what the Court had already determined, on its own, to be appropriate.

In a letter to the Court dated July 11, 2013 (Doc. 79), which has been docketed as a supplement to Moore's Reply, Moore appears to alter the basis for his claim that the Government breached the Plea Agreement, stating that the purported agreement not to pursue career offender status was a separate oral deal made between Moore's counsel and counsel for the Government immediately prior to Moore's guilty plea:

> On the day of the plea hearing, Hughes said that the probation man seems to think that I would fall up under career offender.  I told Hughes that ain't what I signed for or what we agreed on.  So before taken of the plea he asked [Judge DuBose] if he could have a word with the prosecutor.  He spoke with AUSA May and he said that I wouldn't be a career offender.  So we went on with the taken of the plea.

(Doc. 79 at 1).

Even had counsel for the Government made such a representation, Moore's reliance on it was unreasonable in light of the last paragraph of the written Plea Agreement, which states that "[t]his document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all parties."  (Doc. 29 at 12, ¶ 26).  Moreover, as previously determined, the Plea Agreement made clear that the Government would be providing "information concerning [Moore's] background" to the probation office and that the ultimate sentencing guideline determination was at the Court's discretion.

The Court finds that the Government did not breach the Plea Agreement as Moore alleges; therefore, Moore's counsel was not ineffective for failing to lodge such an objection.

Because both claims asserted by Moore in his "Motion to Expand or Amend" (Doc. 76) are meritless, amending Moore's petition to add them would be futile. Accordingly, the Court finds that Moore's "Motion to Expand or Amend" (Doc. 76) is due to be **DENIED**.

### 2. "Judicial Notice" (Doc. 78)

On June 28, 2013, Moore filed a document styled "Judicial Notice," pointing the Court to two recent Supreme Court decisions, Alleyne v. United States, 133 S. Ct. 2151 (2013), and Descamps v. United States, 133 S. Ct. 2276 (2013). Neither of these cases affords Moore relief. In his Plea Agreement, Moore waived his right to a trial by jury. See (Doc. 29 at 1); Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) ("A plea of guilty is a waiver of several constitutional rights, including . . . the sixth amendment right[] to insist on a jury trial . . ."). Regardless, his guilty plea did not subject him to a mandatory minimum sentence. Therefore, Alleyne is inapplicable. Descamps is also inapplicable because he was not sentenced pursuant to any statutory enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e). Rather, his prior convictions were used to enhance his sentencing range under the United States Sentencing Guidelines.

### 3. Motions to Dismiss (Docs. 77, 80)

"With regard to [Moore]'s motion[s] to dismiss the indictment, because he voluntarily pleaded guilty with the advise of competent counsel, he has waived any non-jurisdictional challenges to his indictment." United States v. Arnaiz, 144 F. App'x 27, 31 (11th Cir. 2005) (citing United States v. Broce, 488 U.S. 563, 569 (1989)). Accordingly, Moore's motions to dismiss (Docs. 77, 80) are due to be **DENIED**.[22]

---

[22] The Court reiterates that Moore's first motion to dismiss (Doc. 77) is also due to be denied for the reason previously stated in footnote 20, *supra*.

**III.**  **Conclusion**

In accordance with the foregoing analysis, it is **ORDERED** as follows:

1. Moore's claim regarding trial counsel's failure to file an appeal is set for an evidentiary hearing before the undersigned pursuant to § 2255(b) and Rule 8 of the Federal Rules Governing Section 2255 Cases in the United States District Courts, at a date and time to be set out in a separate order,

2. All other claims raised in Moore's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 66) are **DENIED**, and

3. Moore's "Motion to Expand or Amend" (Doc. 76) and his two Motions to Dismiss (Docs. 77, 80) are **DENIED**.

**DONE** and **ORDERED** this the **21st** day of **March 2014.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**